IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| PROGRESSIVE NORTHERN INSURANCE COMPANY, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. RDB 03-2987 |
| AIRBORNE EXPRESS, INC., | * | |
| | * | |
| Defendant, | * | |
| v. | | |
| STATE FARM INSURANCE COMPANY, | * | |
| | * | |
| Defendant-Intervenor. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Pending before this Court are cross-motions for summary judgment filed by Plaintiff

Progressive Northern Insurance Company ("Progressive") and Defendant Airborne Express, Inc.

("Airborne") concerning coverage under a commercial automobile insurance policy.  Progressive

initiated this case with a Complaint for Declaratory Judgment after an action was filed in the Circuit

Court for Prince George's County, Maryland, *Crenshaw, Personal Rep. v. Airborne Freight Corp.*

*et al.*, Civil Case Number CAL-02-29674, concerning liability for a car accident that occurred on

September 26, 2002.  The accident occurred when a West Enterprises' van driven by Michelle Allen

crossed the double-yellow center line and struck a vehicle driven by Jocklyn Lane.  Ms. Lane died as a

result of injuries sustained from the accident.

In this action, Progressive alleges that it is under no obligation to provide liability insurance coverage or to defend Airborne under a contract for insurance it issued to Alexander and Renee West, t/a West Enterprises ("West Enterprises") with respect to the September 26, 2002 car accident. Airborne, the only remaining active Defendant in this action,[1] alleges that it was an "additional insured" under a Progressive insurance policy issued to West Enterprises. Airborne alleges that Mr. Major Asseged of Imperial Insurance Services LLC ("Imperial") was an agent of Progressive and bound Progressive to treat Airborne as an additional insured as the result of Imperial's issuance of certain notices to Airborne. Airborne further alleges that, as an additional insured, pursuant to Maryland insurance law, Progressive's failure to provide any notice of cancellation of the West Enterprises' insurance to Airborne obligates Progressive to both defend and indemnify Airborne in connection with the action filed in the Circuit Court for Prince George's County, Maryland.

This Court has jurisdiction over this action based on diversity of citizenship,[2] pursuant to 28

---

[1]    On May 10, 2004, this Court granted State Farm Insurance Company's Motion to Intervene and, although State Farm answered Plaintiff's Complaint, it has not participated, nor is it mentioned, in the motions currently pending before this Court. Specifically, State Farm has not filed any brief or memorandum in connection with the cross-motions for Summary Judgment before this Court. On March 10, 2005, this Court approved Plaintiff's request to voluntarily dismiss all of the other Defendants in this action.

[2]    Although Progressive's Complaint does not allege that this Court has jurisdiction pursuant to 28 U.S.C. § 1332, it appears that this Court has jurisdiction on the basis of diversity of citizenship. Progressive is a Wisconsin company and Airborne is located in Maryland. Although Airborne is the sole remaining Defendant, all of the other defendants named in this action were similarly diverse from Progressive at the time the Complaint was filed. Based on additional briefing requested by this Court, it is clear that the amount in controversy exceeds $75,000, which is also supported by Exhibits A and C attached to Progressive's Complaint. As noted below, the state action was settled with Airborne paying $485,000. The Defendant contends that Progressive should be responsible for this payment.

2

U.S.C. § 1332, and the law of Maryland applies to this action.[3]  The issues have been fully briefed and

no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated below,

Airborne's Motion for Summary Judgment is DENIED and Progressive's Motion for Summary

Judgment is GRANTED.

BACKGROUND

On September 26, 2002, Michelle Allen, an employee of West Enterprises, lost control and

crossed the double-yellow center line on Columbia Park Road in Landover, Maryland while driving a

1996 Ford Econoline van owned by West Enterprises.  As a result, Ms. Allen struck Jocklyn Lane's

vehicle head-on.  On November 5, 2002, Ms. Lane passed away at the age of 48 as a result of the

injuries sustained in the accident.  The representative of Ms. Lane's estate filed a Complaint seeking

compensatory damages in the Circuit Court for Prince George's County, Maryland, *Crenshaw,*

*Personal Rep. v. Airborne Freight Corp. et al.*, Civil Case Number CAL-02-29674.  In the

Complaint filed in the Circuit Court for Prince George's County, Ms. Lane's Estate asserts that

---

[3]      As a general rule, in a contract case based on diversity of citizenship, such as the case at
bar, the Court must determine which state's law to apply.  This Court has previously noted:

> "In insurance contract cases, Maryland courts generally follow the rule of *lex locus
> contractu*, which requires that the construction and validity of a contract be determined by
> the law of the state where the contract is made."  *Roy v. Northwestern Nat'l Life Ins.*
> *Co.*, 974 F. Supp. 508, 512 (D. Md. 1997), *aff'd* 141 F.3d 1159 (4th Cir. 1998) (citing
> *Nationwide Mut. Ins. Co. v. Wendler*, 796 F. Supp. 201, 202 (D. Md. 1992)); *Aetna*
> *Casualty & Surety Co. v. Souras*, 552 A.2d 908, 911 (Md. Ct. Spec. App. 1988) (citing
> *Traylor v. Grafton*, 332 A.2d 651, 660 (Md. 1975)).  "The *locus contractu* of an
> insurance policy is the state in which the policy is delivered and the premiums are paid."
> *Aetna*, 552 A.2d at 911 (citing *Sun Ins. Office v. Mallick*, 153 A. 35, 39 (Md. 1931)); *Roy*,
> 974 F. Supp. at 512 (citing *Sting Sec, Inc. v. First Mercury Syndicate, Inc*., 791 F. Supp.
> 555, 558 (D. Md. 1992)).

*Hyde v. Fidelity & Deposit Co.*, 23 F. Supp. 2d 630, 632 (D. Md. 1998).

Airborne is vicariously liable for the alleged negligence caused by Ms. Allen in causing the accident. The state court action has been settled and dismissed, with Airborne paying $485,000 in full and final settlement of the claims Ms. Lane's estate brought against Airborne.

West Enterprises is a delivery service owned and operated by Alexander and Renee West. Airborne, an air express transportation company in the business of transporting documents and packages, contracted with West Enterprises on October 14, 2001 to provide pickup, transport, and delivery services in the Prince George's County area. Airborne states that West Enterprises was an independent contractor. Pursuant to the terms of the cartage agreement between Airborne and West Enterprises, West Enterprises had to obtain automobile liability insurance of $1,000,000 per occurrence. The cartage agreement further states:

> Prior to performing any services under this Agreement, Contractor shall furnish to Airborne certificates of insurance evidencing the above coverages, including the endorsement for additional insured. Each certificate shall state that Airborne will be notified in writing 30 days before cancellation, material change, or renewal of insurance. Contractor shall furnish to Airborne certificates for replacement insurance meeting the requirements of this section no less than seven (7) days prior to the effective date of any such cancellation, material change or renewal.

(Def.'s M. for Summ. J. Ex. 1).

The Econoline van involved in the September 26, 2002 accident, which was purchased by West Enterprises from Airborne on November 19, 2001, was not initially covered by West Enterprises' insurance policy (policy number CA 0-45-62-950-1/CA 0-47-84-680-1) until April 15, 2002. This Econoline van was assigned an identification number of 33777. On April 15, 2002, van 33777 was listed for the first time on an existing West Enterprises' policy bearing the Policy Number CA 0-47-84-680-1. However, West Enterprises failed to timely pay premiums and on May 14, 2002,

4

Progressive sent a Notice of Cancellation for Policy Number CA 0-47-84-680-1 to Alexander West

that would take affect on May 25, 2002, unless the premium payment was made.  The total due for the

policy at this time was $105,153.  Although West Enterprises made a payment of $5,000 toward this

amount due, said payment was not honored by the bank.  The end result was that Policy Number CA

0-47-84-680-1 was cancelled.  There is absolutely no dispute that as of May 30, 2002 van 33777,

which was involved in the accident, was uninsured.  Specifically, there is no issue of fact on this

question.  On September 26, 2002, when the accident in question occurred, van 33777 was not listed

on any active Progressive insurance policy held by West Enterprises.  It is undisputed that Progressive

did send to West Enterprises, the insured, a notice of cancellation of this Policy. (Pl. Mot. for Summ. J.

Ex 16).  The fact that van 33777 was not listed on any active Progressive insurance policy at the time

of the accident can best be evaluated in the context of a series of non-payment problems of West

Enterprises resulting in cancellation and reinsurance of multiple insurance policies covering different

vehicles.  This confusion resulting from the non-payment of premiums by West Enterprises is illustrated

by a review of the chronology of West Enterprises non-payment problems.

At the request of West Enterprises and Airborne, Imperial issued certificates of insurance to

Airborne on January 11, 2001 for policy number 0-45-62-950-0 ("January 2001 Certificate") and

December 26, 2001 for policy number 0-45-62-950-1 ("December 2001 Certificate") (apparently

starting in December 2001 this was the same policy as policy number 0-47-84-680-1).  Both the

January 2001 Certificate and the December 2001 Certificate stated: "This Certificate is issued as a

matter of information only and confers no rights upon the Certificate holder.  This Certificate does not

amend, extend or alter the coverage afforded by the polices below."  Progressive never directly sent

certificates of insurance for these policies, even though it did send a certificate to Airborne, noting that it

was an additional insured, for another policy not at issue in this case that West Enterprises carried.

(Def.'s M. for Summ. J. Ex. 8).  Neither the January 2001 Certificate nor the December 2001

Certificate were sent to Progressive, although Mr. Asseged called a customer service line at

Progressive to confirm Airborne's status as an additional insured before sending the certificates.

(Def.'s M. for Summ. J. Ex. 3, Asseged Depo. at 58-59).  Mr. Asseged was authorized by

Progressive, in general, to send out these types of certificates, as long as the certificates met certain

requirements, including that the certificates accurately stated the insured's coverages and limits.  (Pl.'s

Opp. to Airborne's Mot. for Summ. J. Ex. 2, p. 9).

There is no evidence that Imperial or West Enterprises sent the "endorsement for additional

insured" to Airborne, as was required by the cartage agreement.  The Declarations for Policy Number

0-47-84-680-1 includes an additional insured endorsement.  However, this endorsement does not

show Airborne as an additional insured.  (Pl.'s Mot. for Summ. J., Ex. 6).[4]  In addition, on three of

Progressive's Notice of Cancellation Due to Non-Payment of Premium statements sent to West

Enterprises for its policy number 0-47-84-680-1, there is section listing any additional interests in the

policy.  (Pl.'s Mot. for Summ. J., Exs. 10, 13, 16).  Consistent with the Policy's additional insured

endorsement, Airborne is not listed, but there is a listing for Enterprise Fleet.  (*Id.*)

As indicated above, a series of non-payment issues concerning the policy at issue in this case

occurred.  On February 19, 2002, Progressive sent a Notice of Cancellation for CA 0-47-84-680-1

---

[4]         An Amended Declarations for Policy Number 0-47-84-680-1, effective April 15, 2002, does not contain an additional insured endorsement.  (Pl.'s Mot. for Summ. J., Ex. 9).

6

to Alexander West stating that the cancellation would take effect on March 2, 2002, unless the premiums were paid.  On March 1, 2002, West Enterprises made a partial payment toward the premium and a few days later, on March 6, 2002, Progressive sent a Notice of Reinstatement based on the partial premium payment.  A month later, however, on April 4, 2002, Progressive sent another Notice of Cancellation for CA 0-47-84-680-1 to Alexander West stating that the cancellation would take effect on April 15, 2002, unless the premiums were paid.  As noted above, while van 33777 was added to policy CA 0-47-84-680-1, that policy was cancelled as a result of non-payment of premium.  That cancellation remained in effect through the date of the accident on September 26, 2002.

On September 26, 2002, van 33777 being driven by a West Enterprises employee, was not listed on any insurance policy held by West Enterprises.  Progressive had sent West Enterprises, the listed insured, a Notice of Cancellation of the Policy.

APPLICABLE STANDARDS OF LAW

I.      Declaratory Judgment

Even when this Court has jurisdiction of an action based on diversity of citizenship, federal standards must dictate when declaratory relief is appropriate in federal court.  *See Wohl v. Wohlmuth*, 340 F. Supp. 107, 113 -114 (D. Md. 1972), *revd on other grounds*, *Wohl v. Keene*, 476 F.2d 171 (4th Cir. 1973); *North East Ins. Co. v. Northern Brokerage Co.*, 780 F. Supp. 318, 320 (D. Md. 1991).[5]  "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party

---

[5]      Progressive's Complaint alleges that this action for declaratory judgment is brought pursuant to Title 3, subtitle 4, Courts & Judicial Proceedings Art., Maryland Code.

7

seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

As this Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, then according to the Declaratory Judgment Act, this Court has discretion to hear this action requesting declaratory judgment. The United States Court of Appeals for the Fourth Circuit has "held that district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998). In addition, the Fourth Circuit has provided guidance on the exercise of this discretion. Declaratory judgment should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Aetna Cas. & Sur. Co.,* 139 F.3d at 422 (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

The underlying state court action related to this case has concluded, having been fully and completely resolved by settlement. Furthermore, insurance coverage was not at issue in the underlying state court action. Therefore, this Court, in its discretion, will hear this action for declaratory judgment, as doing so will not interfere with the underlying state court action nor result in the controversy being tried in a piecemeal fashion, without settling the entire insurance coverage issue.

II    Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court explained that only

"facts that might affect the outcome of the suit under the governing law" are material. *Anderson*, 477

U.S. at 248.  Moreover, a dispute over a material fact is *genuine* "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Id.*  The Court further explained that,

in considering a motion for summary judgment, a judge's function is limited to determining whether

sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a

jury for resolution at trial. *Id.* at 249.  In that context, a court is obligated to consider the facts and all

reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When both parties file motions for summary judgment, as here, the court applies the same

standards of review. *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991); *ITCO*

*Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to

resolve issues of material facts on a motion for summary judgment– even where . . . both parties have

filed cross motions for summary judgment.") (emphasis omitted), *cert. denied,* 469 U.S. 1215 (1985).

The role of the court is to "rule on each party's motion on an individual and separate basis, determining,

in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne*

*Mgmt. Corp. v. Hartford Acc. & Indem. Co.,* 627 F. Supp. 170, 172 (D. Md. 1985). "[B]y the filing

of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is

advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory

is adopted." *Nafco Oil & Gas, Inc. v. Appleman,* 380 F.2d 323, 325 (10th Cir. 1967); *see also*

*McKenzie v. Sawyer,* 684 F.2d 62, 68 n.3 (D.C. Cir. 1982) ("neither party waives the right to a full

trial on the merits by filing its own motion.").  However, when cross-motions for summary judgment

demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they

"may be probative of the non-existence of a factual dispute." *Shook v. United States,* 713 F.2d 662,

665 (11th Cir. 1983).

III   <u>Maryland Law on Interpretation of Insurance Contracts</u>

Generally, Maryland law requires insurance contracts to be objectively construed. *See*

*O'Quinn v. Maryland Auto Ins. Fund*, 157 Md. App. 214, 219, 850 A.2d 386, 389 (2004).

Pursuant to Maryland law, an insurance agreement is to be viewed as a whole to determine the intention

of the parties and the purpose which they sought to accomplish. *See id.* When the provisions of the

insurance contract are not ambiguous, a court should enforce them according to their plain meaning.

*See id.*

*Insurance Broker vs. Insurance Agent*

One issue in this action is whether Mr. Asseged was an insurance broker or an insurance agent,

who could bind Progressive. The Maryland Court of Appeals has specifically addressed the distinction

between an insurance agent and an insurance broker. "Authorities everywhere agree that an insurance

agent, so far as the insurer is concerned, is a person expressly or impliedly authorized to represent it in

dealing with third parties in matters relating to insurance, and an insurance solicitor, or broker, is one

who acts as a middle man between the insured and the insurer, and who solicits insurance from the

public under no employment from any special company, but having secured an order, either places the

insurance with a company selected by the assured, or in the absence of any selection by him, then with

a company selected by the broker." *American Cas. Co. of Reading, Pa. v. Ricas*, 179 Md. 627,

631, 22 A.2d 484, 487 (1941) (cited in *Popham v. State Farm Mut. Ins. Co.*, 333 Md. 136, 156,

634 A.2d 28, 38 (1993)).  "An insurance broker is ordinarily employed by a person seeking insurance, and when so employed, is to be distinguished from the ordinary insurance agent, who is employed by insurance companies to solicit and write insurance by, and in the company."  *See id.*

*Cancellation of Insurance Policies Pursuant to Maryland Law*

Another issue raised in this action is whether Airborne, as a possible additional insured, was entitled to notice of cancellation of the policy obtained by West Enterprises.  Section 27-605 (d), Insurance Article, Maryland Code, which is the statutory section dealing with notice of cancellation in this context, for non-payment of a premium, states:

> At least ten days before the date an insurer proposes to cancel a policy for non-payment of premium, the insurer shall cause to be sent to *the insured*, by certificate of mailing, a written notice of intention to cancel for non-payment of premium.  (emphasis added).

Section 27-605 (d) does *not* specify that an *additional insured* must be notified of cancellation for nonpayment.  *Couch on Insurance* states that "[a]dditional insureds do not have an absolute right to notice of cancellation , [footnote omitted] unless designated under the policy as the party entitled to notice of cancellation."  2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* 3d. § 31.21 (1997).

DISCUSSION

A.      Mr. Asseged's Role

Determining whether Mr. Asseged possessed actual or apparent authority to bind Progressive is important to evaluate this dispute, as insurers are vicariously liable only for the tortious acts of their agents acting within the course and scope of their agency.  As stated above, pursuant to Maryland law, an insurance agent is a person expressly or impliedly authorized to represent the insurance company in

dealing with third parties in matters relating to insurance. *See American Cas. Co. of Reading, Pa. v. Ricas*, 179 Md. 627, 631, 22 A.2d 484, 487 (1941) (cited in *Popham v. State Farm Mut. Ins. Co.*, 333 Md. 136, 156, 634 A.2d 28, 38 (1993)).  In contrast, an insurance broker acts as a middle man between the insured and the insurer and is ordinarily employed by a person seeking insurance, the insured.  *See id.*  A broker typically does not place insurance exclusively with one insurance company, but has the ability to solicit insurance from multiple insurance carriers.  *See generally* 3 *Couch* § 45-1. The Maryland Court of Appeals has stated that "[t]he first uniform rule is that whether an agency in fact has been created, is to be determined by the relations of the parties as they exist under their agreements, or acts." *Ricas*, 179 Md. at 631, 22 A.2d at 487.  "The question ultimately is one of intention." *Id.  Couch on Insurance* further suggests that "whether a person acts as a broker or agent is not determined by what he or she is called but is to be determined from what he or she does." 3 *Couch* § 45-4.

Airborne argues that the undisputed fact that Imperial sent the January 2001 Certificate and December 2001 Certificate to Airborne, indicating that it was an additional insured, binds Progressive to defend and indemnify it because Mr. Asseged of Imperial was Progressive's agent.  Airborne also points to additional evidence, such as the listing of Imperial next to "Agent" on a pre-printed Declarations sheet and the testimony from Mr. Asseged that he was a Progressive agent, in asserting that Mr. Asseged was an agent with the authority to bind Progressive.  Airborne argues that Mr. Asseged was an actual agent for Progressive and, in the alternative, that Progressive is bound by Mr. Asseged's actions because he had apparent authority to act on Progressive's behalf.  Airborne, however, concedes that Mr. Asseged also represented West Enterprises and, therefore, he was acting

as a dual agent.  (Def.'s M. for Summ. J. at 11 n.4).  Progressive argues that Mr. Asseged was an

insurance broker working for West Enterprises, and, as a result, had neither actual nor apparent

authority to bind Progressive.

Pursuant to Maryland law, "where the alleged agency is dependent upon the acts of the parties,

the burden of proof rests upon the person alleging the agency to show not only its existence but its

nature and extent[, but] [t]here must also be a showing not only that a person is an agent of his principal

but that in the particular transaction he was acting within the scope of his employment and that the acts

in question out of which the tort arose were within the scope of the agent's authority."  *Medical Mut.*

*Liability Ins. Soc. of Maryland v. Mutual Fire, Marine & Inland Ins. Co.,* 37 Md. App. 706, 713,

379 A.2d 739, 743 (Ct. Spec. App. 1977).  Airborne presents the following evidence in support of its

position that Mr. Asseged was acting as an agent for Progressive.  First, Progressive entered into a

Producer's Agreement with Imperial stating, under Article II entitled Authority:  "You [Imperial] have

the authority to solicit, provide quotes, receive applications, bind coverage, and collect, receive, and

receipt for premiums for insurance products specified in our Underwriting Requirements, in the state(s)

of MD [Maryland], subject to and in accordance with this Agreement and the Underwriting

Requirements."  (Pl.'s Opp. to Airborne's Mot. for Summ. J. Ex. 1).  Airborne contends that

Imperial's right to "bind coverage" indicates that it was an agent of Progressive.  Second, in a

document discussing Progressive's guidelines for agents concerning commercial vehicle insurance,

Progressive gives agents the right to issue certificates of insurance, subject to certain conditions.  The

guideline states: "You may issue certificates on behalf of your Progressive insureds provided the

following requirements are met:

- The coverages and limits must be accurately stated on the certificate.  We issue symbol 7 type policies unless symbol 8 or 9 is approved . . . .
- Do not promise notice of cancellation to the certificate holder.  Standard ACORD certificates should be left blank in the section dealing with the number of days notice required for cancellation."

(Pl.'s Opp. to Airborne's Mot. for Summ. J. Ex. 2, p. 9).  Third, Mr. Asseged testified that he is an authorized representative of Progressive and that he was authorized to accept premiums on behalf of Progressive.  (Def.'s Mot. for Summ. J., Ex. 3, Asseged Depo. at 25, 35, 55, 70, 72-73).  Fourth, Progressive issued invoices to West Enterprises with the statement in the upper left hand corner of the invoices that stated "Serving you through Agent Imperial Ins. Ser. LLC."  (Def.'s M. for Summ. J., Ex. 9).  Lastly, the Declarations pages for Progressive's policies insuring West Enterprises identified Imperial next to the term "Agent."

Even though Airborne argues that Imperial was an agent of Progressive, it concedes that in this case, Imperial was a dual agent, as it also represented West Enterprises.  (Def.'s M. for Summ. J. at 11 n.4).  "Maryland has recognized . . . that in some circumstances a broker serves in a dual capacity." *Commercial Union Ins. Co. v. Porter Hayden Co.*, 97 Md. App. 442, 453, 630 A.2d 261, 267 (1993) *vacated on other grounds* 339 Md. 150, 661 A.2d 691 (1995).[6]  "The possibility of dual

---

[6]     "For example, a broker may act as an agent of the insured with respect to procuring insurance and then act as the insurer's agent for purposes of delivering the policy and collecting the premium." *Commercial Union Ins. Co. v. Porter Hayden Co.*, 97 Md. App. 442, 453, 630 A.2d 261, 267 (1993) *vacated on other grounds* 339 Md. 150, 661 A.2d 691 (1995) (citing *Grain Dealers Mut. Ins. Co. v. Van Buskirk,* 241 Md. 58, 66, 215 A.2d 467 (1965); *Sun Ins. Office, Ltd. v. Mallick,* 160 Md. 71, 82, 153 A. 35 (1931)).  "The rationale for this principle is that, even absent evidence of a consensual agency relationship between the insurer and the broker, the insurer, by sending the executed policy to the broker, has entrusted the broker with the delivery of the policy and the collection of the premium, thereby implicitly authorizing the broker to act on the insurer's behalf."  *Commercial Union Ins. Co.,* 97 Md. App. at 453, 630 A.2d at 267.

agency, and its propriety where there is good faith, no conflict of interest, and due authority from both principals, is well recognized." *Hampton Roads Carriers Inc. v. Boston Ins. Co.,* 150 F. Supp. 338, 343 n. 9 (D. Md. 1957). *Couch on Insurance* states that:

> In the absence of special circumstances, the broker will generally be considered the agent of the insured as to matters connected with the application and procurement of the insurance, including representations and warranties, despite the fact that the broker is the agent of the insurer for delivery of the policy and transmittal of the premium to the insurer and the fact that the broker receives his or her compensation from the insurer.

3 *Couch* § 45.4.

In *American Cas. Co. of Reading, Pa. v. Ricas*, 179 Md. 627, 22 A.2d 484 (1941) the Maryland Court of Appeals examined whether an insurance broker who placed policies with a number of insurers and who was not employed by any single insurer was an agent of the insurer. *See id.* The Maryland Court of Appeals concluded that the broker was an agent of the insured, not the insurer. *See id.* The court stated: "an insurance solicitor, or broker, is one who acts as a middle man between the assured and the insurer, and who solicits insurance from the public under no employment from any special company, but having secured an order, either places the insurance with a company selected by the assured, or in the absence of any selection by him, then with a company selected by the broker. *Ordinarily, the relation between the insured and the broker is that between principal and agent.*" *Ricas,* 179 Md. at 631, 22 A.2d at 487 (emphasis added).

There is clear evidence that Mr. Asseged of Imperial acted as an insurance broker for West Enterprises. Mr. Asseged sought out insurance for West Enterprises from different insurance companies, and actually obtained insurance from different companies, before eventually placing the policy with Progressive. (Pl.'s M. for Summ. J. Ex. 7, Asseged Depo. at 66-67). Mr. Asseged acted

as a middle man when West Enterprises wanted to list more than 40 vehicles on its commercial policy and Progressive was not willing to write a policy with this level of risk. (Pl.'s M. for Summ. J. Ex. 8). Mr. Asseged had the power under the Producer's Agreement to temporarily bind Progressive, but he could not underwrite this policy without Progressive's approval.[7] Furthermore, Mr. Asseged is clearly not a Progressive employee, who solely solicits customers for Progressive insurance products. Therefore, based on the undisputed facts, this Court finds, as a matter of law, that Mr. Asseged's role was consistent with that of a broker, as defined pursuant to Maryland law.

Assuming, *arguendo*, that Mr. Asseged was not a pure insurance broker, and viewing the facts in the light most favorable to Airborne, Mr. Asseged could be considered a dual agent, with two principals - West Enterprises and Progressive. However, not every action taken by Mr. Asseged is attributable to both principals, especially when the principals' interests would be in conflict. 3 *Couch* § 45-1. Clearly, by undertaking certain acts Mr. Asseged was acting on behalf of Progressive (*e.g.* the collection of premiums), while other undertakings were on behalf of West Enterprises (*e.g.* obtaining the desired coverage for West Enterprises). Therefore, this Court must examine whether Mr.

---

[7]        The Producer's Agreement, in addition to providing producers with the authority to conduct certain activities as noted above, states that Progressive will "issue all policies, endorsements, renewal notices, cancellation notices, certificates, filings, and other required documentation of coverage." (Pl.'s Opp. to Airborne's Mot. for Summ. J. Ex. 1). Progressive cites *Medical Mut. Liability Ins. Soc. of Maryland v. Mutual Fire, Marine & Inland Ins. Co.*, 37 Md. App. 706, 379 A.2d 739 (Ct. Spec. App. 1977), which discussed that most soliciting agents are given the power of temporary binder to protect the insured while his application is being considered by the insurance company for acceptance or rejection. However, this ability to temporarily mind the insurance company does not mean that the soliciting agent is a general agent of the insurance company that can accept the risk of a given insurance policy for the company. *See id.* at 37 Md. App. 715, 379 A.2d 744.

Asseged's acts of sending the January 2001 Certificate and the December 2001 Certificate to Airborne was attributable to Progressive or to West Enterprises.

The cartage agreement between Airborne and West Enterprises specifically required "Contractor" (in this case West Enterprises) to furnish to Airborne certificates of insurance evidencing the required coverages, including the endorsement for the additional insured. (Def.'s M. for Summ. J. Ex. 1). Mr. Asseged testified that it was Airborne and the Wests who requested that the certificates be sent to Airborne. (Def.'s M. for Summ. J. Ex. 3, Asseged Depo. at 27). Progressive did not receive a copy of these certificates. (Def.'s M. for Summ. J. Ex. 3, Asseged Depo. at 56). The endorsement for the additional insured was never sent to Airborne and there is no evidence that Airborne (or West Enterprises) specifically requested this document in accordance with the cartage agreement. In fact, if Airborne (or West Enterprises) had requested the document Airborne may have learned that it did not appear on the policy covering van 33777 as an additional insured.[8] However, Mr. Asseged testified that he contacted someone at Progressive via the customer service line to confirm that Airborne was an additional insured.[9] (Def.'s M. for Summ. J. Ex. 3, Asseged Depo. at 58). Mr. Asseged was authorized by Progressive to "issue certificates *on behalf of your Progressive insureds*" provided the coverages and limits were accurately stated on the certificate. (Pl.'s Opp. to Airborne's Mot. for

_____

[8]    Furthermore, there is no indication from the documents before the Court that the Certificates of Insurance provided by Imperial to Airborne specified what vehicles were covered. (Def.'s M. for Summ. J. at Exs. 4-5).

[9]    Progressive attaches an Affidavit of Mary Alice Fitzgerald, an employee of Progressive, who reviewed the files of the relevant policies at issue in this case and that Progressive did not receive the Certificates of Insurance prepared by Mr. Asseged. Mr. Asseged, in his deposition, never indicated that these documents were sent to Progressive. (Def.'s M. for Summ. J. Ex. 3, Asseged Depo. at 56). The Affidavit of Mary Alice Fitzgerald does not create any disputes of material fact.

Summ. J. Ex. 2, p. 9) (emphasis added).  Both the January 2001 Certificate and the December 2001

Certificate do not exclusively list information about Progressive insurance.  (Def.'s M. for Summ. J.

Exs. 4-5).  Instead both Certificates include other insurance companies that, according to the

certificate, provide insurance for West Enterprises and for Airborne, as an additional insured.  (Def.'s

M. for Summ. J. Exs. 4-5).

        In determining whether an intermediary acts as an agent or as a broker, this Court will consider:

1)  whether the insurer, Progressive, or the insured, West Enterprises, called the intermediary, Imperial,

into action; 2)  whether the insurer or the insured controlled the intermediary's actions; and 3)  whose

interests the intermediary was protecting, the insurer's or the insured's.  3 *Couch* § 45-4.[10]  Applying

these three criteria to the facts outlined above, it is clear that West Enterprises and Airborne, not

Progressive, called Mr. Asseged "into action" to issue the Certificates of Insurance.  To the extent that

West Enterprises was the party calling Mr. Asseged into action, it was the party controlling Mr.

Asseged's actions.  Mr. Asseged explained that he understood that Airborne would stop West

Enterprises from working or "cut them off" if they do not receive a certificate of insurance evidencing

the appropriate coverage.  (Def.'s M. for Summ. J. Ex. 3, Asseged Depo. at 27).  Therefore, it

appears that Mr. Asseged was representing West Enterprises' interests when he sent the Certificates to

Airborne.  This Court finds, as a matter of law, that, even if Mr. Asseged was a dual agent when he

sent the January 2001 Certificate and the December 2001 Certificate to Airborne, he was acting on

---

[10]        The Tentative Draft of the Restatement (Third) of Agency states: "To determine
whether an intermediary acts as an 'agent' or as a 'broker,' it is relevant whether the insurer or the
prospective insured calls the intermediary into action, whether the insurer or the prospective insured
controls the intermediary's actions, and whether the intermediary represents the insurer's or the
prospective insured's interests."  Restatement (Third) of Agency § 3.14 cmt. b (T.D. No. 3, 2002).

behalf of West Enterprises, and not Progressive.  As a result, based on the undisputed facts presented in this case, Mr. Asseged's sending of these Certificates could not bind Progressive, as he was not acting as Progressive's agent when he provided the Certificates to Airborne.

B.      Mr. Asseged's Apparent Authority

If Mr. Asseged was not acting as Progressive's agent, with actual authority, when he issued the January 2001 Certificate and the December 2001 Certificate, Airborne argues, in the alternative, that he had apparent authority to act on Progressive's behalf.  Pursuant to Maryland law, apparent authority arises where the purported agent, who may or may not have actual authority to act for the purported principal, but because of conduct on the purported principal's part the third person believes that the authority to act exists."  *Medical Mut. Liability Ins. Soc. of Maryland*, 37 Md. App. at 720, 379 A.2d at 746.  "The principal, either actively or passively, creates a situation that causes the third person to be misled."  *Id.*  The Restatement (Second) on Agency states: "Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with *the other's manifestations to such third persons*."  Restatement (Second) of Agency § 8 (1957) (emphasis added).[11]

There is no evidence of any manifestations by Progressive to Airborne of any agency of Mr. Asseged.  There is no evidence that Airborne had any grounds to reasonably believe that Mr. Asseged had authority to act for Progressive and that such a belief was traceable to Progressive's manifestations.

---

[11]      The Tentative Draft of the Restatement (Third) of Agency states:  "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is *traceable to the principal's manifestations*."  Restatement (Third) of Agency § 2.03 (T.D.  No. 2, 2001) (emphasis added).

There is no evidence that Airborne had any contact with Progressive, nor that Airborne had access to the Progressive Commercial Vehicle Insurance guidelines, which stated that producers could issue accurate certificates of insurance.  The January 2001 Certificate and the December 2001 Certificate received from Mr. Asseged contained information about multiple insurance carriers, not just Progressive.  Therefore, even though Mr. Asseged signed the Certificates as an "Authorized Representative" it is not clear for whom he was acting as an authorized representative.  Furthermore, the reasonableness of Airborne's belief that the certificate bound Progressive to cover it as an additional insured is lacking because of the disclaimer that appeared on the certificate itself.  Both the January 2001 Certificate and the December 2001 Certificate stated:  "This Certificate is issued as a matter of information only and confers no rights upon the Certificate holder.  This Certificate does not amend, extend or alter the coverage afforded by the polices below."[12]  In addition, the Certificates stated:

> The policies of insurance listed below have been issued to the insured named above [Alexander West t/a West Enterprise] for the policy period indicated notwithstanding any requirement, term or condition of any contract or other document with respect to which this Certificate may be issued or may pertain.  The insurance afforded by the policies described herein is subject to all of the terms, exclusions and conditions of such policies.  Aggregate limits shown may have been reduced by paid claims.

(Def.'s M. for Summ. J. Ex. 4-5).  This Court finds that there are simply no facts indicating a manifestation by Progressive that Mr. Asseged had authority to act on its behalf.  Accordingly, as a matter of law, Progressive cannot be bound to Airborne based on the actions of Mr. Asseged.

C.    Notice of Cancellation of Insurance for Additional Insured

---

[12]    The non-binding nature of these types of certificates of insurance is likely why Airborne also requested the actual additional insured endorsement.

Even assuming, *arguendo*, that Airborne could have shown that it was an additional insured under the Progressive policy at issue, it was not, pursuant to Maryland law, entitled to notice of cancellation from Progressive.  Section 27-605 (d), Insurance Article, Maryland Code, which is the statutory section dealing with notice of cancellation in this context, for non-payment of a premium, states:

> At least ten days before the date an insurer proposes to cancel a policy for non-payment of premium, the insurer shall cause to be sent to the insured, by certificate of mailing, a written notice of intention to cancel for non-payment of premium.

Section 27-605 (d) does not specify that an additional insured must be notified of cancellation for nonpayment.  *Couch on Insurance* states that "[a]dditional insureds do not have an absolute right to notice of cancellation , [footnote omitted] unless designated under the policy as the party entitled to notice of cancellation."  2 *Couch* § 32.21.  *Couch on Insurance* recognizes that a state statute may impose a greater duty to notify all insured under a policy of cancellation.  *Id.* at § 31.24.  Section 27-605 (d) does not specify, however, that the insurer must notify "all insureds" or "additional insureds." The Section, instead, only states that there must be notification from the insurer to "the insured."

It is undisputed that Progressive notified West Enterprises, the insured, of the cancellation of Policy Number CA 0-47-84-680-1 for non-payment.  In this case, there was no reasonable way for Progressive to even know to notify Airborne about this policy, as it was not listed as an additional insured on the policy and it did not receive copies of the January 2001 Certificate nor the December 2001 Certificate.  Furthermore, under its agreement with Airborne, West Enterprises was required to furnish Airborne with certificates for replacement insurance in the event of cancellation, material change or renewal.  (Def.'s M. for Summ. J. Ex. 1).  Based on the undisputed facts presented, any notification

of cancellation to Airborne should have come from West Enterprises and Progressive is not bound to

indemnify and defend Airborne based on its failure to directly send Airborne a notice of cancellation.

<u>CONCLUSION</u>

For the reasons stated below, Airborne's Motion for Summary Judgment is DENIED and

Progressive's Motion for Summary Judgment is GRANTED.  A separate Order will follow.


July 20, 2005                              /s/_____
                                           Richard D. Bennett
                                           United States District Judge